IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ELIJAH THOMAS, :
:
    Plaintiff, :
:
vs. : CIVIL ACTION 10-271-M
:
MICHAEL J. ASTRUE, :
Commission of Social Security, :
:
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 16). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 20). Oral argument was heard on January 24, 2011. Upon consideration of the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further administrative action not inconsistent with the Orders

of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-eight years old, had completed a high school education (*see* Tr. 209, 316),[1] and had previous work experience as a construction laborer, a lumberyard worker, a janitor, a nursery laborer, and a furniture assembler (*see* Tr. 54). In claiming benefits, Plaintiff alleges disability due to a major depressive disorder with psychotic features, bipolar disorder-mixed, and a personality disorder (Doc. 16 Fact Sheet).

---

[1]**Error! Main Document Only.**Plaintiff stated that he had received a Graduate Equivalency Degree (Tr. 209, 316).

The Plaintiff filed applications for disability insurance and SSI on May 31, 2006 (*see* Tr. 14). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Thomas "was capable of performing his past relevant work as a construction laborer, a lumber yard laborer, a janitor, a nursery laborer, and a furniture assembler" (Tr. 29; *see generally* Tr. 11-30). Plaintiff requested review of the hearing decision (Tr. 94-96) by the Appeals Council, but it was denied (Tr. 1-4).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Thomas alleges that: (1) The Appeals Council failed to properly consider newly-submitted evidence; (2) the ALJ did not properly consider the opinions and diagnoses of a treating physician; and (3) the ALJ relied on an improper hypothetical question to the vocational expert (Doc. 16). Defendant has responded to—and denies—these claims (Doc. 17).

Plaintiff claims that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's treating physician.[2] Specifically, Thomas refers to

---

[2] As a corollary to this claim, Thomas asserts that the ALJ improperly accorded too much weight to the opinions of a non-examining physician. This is the only claim the Court will address.

3

the records of Psychologist Jill Hall (Doc. 16, pp. 12-15). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[3] *see also* 20 C.F.R. § 404.1527 (2010). The Court further notes that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).

Medical records from Southwest Alabama Mental Health (hereinafter *SWAMH*) show that Psychologist Jill Hall saw Thomas, from time-to-time, at least as early as August 13, 1997; Plaintiff was seeking treatment at that time for depression and visual hallucinations (Tr. 307-08; *see generally* Tr. 258-309). She next examined Plaintiff on February 21, 2000 as a consultant when he was admitted to Atmore Community Hospital for a suicide attempt (Tr. 196; *see generally* Tr. 193-97). Thomas reported

---

[3]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1,

multiple stressors (divorce, custody battle, and present relationship) and stated that he harms himself or destroys things when he is stressed; Hall noted that his mood was dysphoric and his affect constricted. She further noted that Thomas had been seen at the mental health center, though he was not currently receiving any treatment; an appointment was scheduled. The Psychologist's diagnosis was major depression, chronic, and borderline personality disorder.

Hall saw Plaintiff again at SWAMH on March 3, 2000; he denied suicidal/homicidal ideation but admitted depression (Tr. 304). Hall discussed goal-oriented activities with him and noted that Thomas was stable (*id.*). Following a period of non-treatment, Plaintiff returned to SWAMH on June 25, 2001, stating the he had been angry and depressed since being off of his medication; Hall completed a mental health evaluation, noting that Thomas was alert, oriented in three spheres, and dysphoric with suicidal ideation (Tr. 297-300). On September 13, the Psychologist completed a plan of care for Thomas, indicating that he suffered from major depressive disorder, recurrent and moderate, and personality disorder (Tr. 292). Hall provided the same diagnosis on March 7, 2002, again after a lengthy absence

---

1981.

of treatment (Tr. 288-89); she completed a treatment plan several weeks later, setting a goal of decreasing depression by obtaining a physical medical assessment and providing individual counseling (Tr. 282-83).

Psychologist Hall examined Thomas again on June 28, 2002 at the request of the Social Security Administration (hereinafter *SSA*) which provided her the medical evidence of record as of that time (Tr. 207-13; Tr. 208).  Thomas reported having a plastic kneecap and scoliosis and to be suffering from depression; he stated that he had been treated intermittently for depression and a suicide attempt (Tr. 208).  The Psychologist noted that Plaintiff appeared to be tending to his personal hygiene as general appearance was neat and clean; Thomas communicated normally, conveying his thoughts and ideas adequately (Tr. 209).  Plaintiff's mood appeared dysphoric, his range of affect constricted, and his affective expression was appropriate to thought content (*id.*).  Thomas reported both auditory and visual hallucinations by history (Tr. 210).  Hall indicated that his thinking was normal, noting that his responses were generally goal directed and relevant; abstract thinking was thought to be low average range of functioning (*id.*).  Thomas reported difficulty concentrating as he was

easily distracted, causing frustration; memory function, both remote and recent, was adequate (Tr. 211). The Psychologist noted poor impulse control, but adequate judgment and insight (*id.*). Hall's diagnostic impression was major depressive disorder, both recurrent and moderate, and a personality disorder; she noted a guarded prognosis (Tr. 212). In additional comments, the Psychologist stated the following:

> It is my impression that at the present time this patient may have difficulty tolerating the stresses of an ordinary work setting due to his level of depression and significant personality disorder. The patient has the ability to understand, to carry out, and remember instructions and to respond appropriately to supervision and co-workers for the most part. This patient is in treatment for a Major Depressive Disorder and also appears to have a Personality Disorder. The patient should be encouraged to continue mental health services and remain compliant with treatment. He might also benefit from Vocational Rehabilitative Services.

(Tr. 213).

On February 18, 2003, Hall completed a discharge summary from SWAMH which indicated that although Thomas had engaged well in treatment, he had not remained focused on his goals, had not developed positive insight into his disorder, had not developed positive coping skills to assist his recovery, and had not

7

developed positive community support; he had, however, developed positive family support (Tr. 277). Hall rated his improvement as four on a ten-point scale (*id.*). On March 3, 2005, the Psychologist signed off on another treatment plan for Thomas which had him diagnosed as mixed bipolar disorder with psychotic features and a personality disorder; the plan called for individual monthly counseling to eliminate anger (Tr. 273-74). A follow-up note on August 15 by Hall noted that Thomas was capable of insight into his problems and that he was in good physical health (Tr. 264-65).

Psychologist Hall examined Thomas again, at the request of the SSA, on August 23, 2006 (Tr. 316-21); she again noted that she had records which had been provided by the SSA (Tr. 320, 321). Hall noted that his general appearance was neat and clean, his speech was intelligible and coherent, and that his mood was dysphoric (Tr. 317). Plaintiff was oriented in four spheres; memory was good, remotely, recently, and immediately (Tr. 318). Thomas's fund of knowledge was good (*id.*). His ability to think abstractly was consistent with low average range of intellectual functioning; no loose associations, tangential thinking, circumstantial thinking, or confusion were noted (Tr. 319). Thomas admitted having visual hallucinations;

he had limited insight (*id.*). The Psychologist's diagnosis was bipolar disorder, mixed, and personality disorder; she thought his prognosis was guarded (Tr. 320). Finally, the Psychologist stated the following:

> This patient may have difficulty with the pressures of an ordinary work setting due to some type of mood problem and a personality disorder. He has the ability to understand, carry out and remember simple instructions, but has only limited ability to respond appropriately to supervision and coworkers. He should return for mental health treatment on a consistent basis.

(Tr. 321).

On September 26, 2006, Psychologist Ellen Eno completed a Psychiatric Review Technique Form and Mental Residual Functional Capacity (hereinafter *RFC*) Assessment (Tr. 322-39).[4] Eno determined that Thomas had an affective disorder and a personality disorder; the affective disorder was characterized as a bipolar disorder by history. The State Psychologist went on to find that Plaintiff was mildly restricted in his activities of daily living, moderately limited in maintaining social functioning and in maintaining concentration,

---

[4]These assessments were done by reviewing the medical file compiled as of that time by the SSA. No personal examination was completed.

persistence, or pace (Tr. 332). Eno went on to find specifically find that Plaintiff had no marked limitations but was moderately limited in his ability to understand, remember, and carry out detailed instructions and in maintaining attention and concentration for extended periods (Tr. 336). In social functioning, Thomas was moderately limited in his ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; he was also moderately limited in his ability to respond appropriately to changes in the work setting (Tr. 337). The Psychologist went on to find that Plaintiff "should have minimal contact with the general public and not work in close proximity to coworkers. Corrective instruction should be presented in a supportive manner;" there should only be infrequent changes in the workplace (Tr. 338).

Plaintiff was involuntarily admitted to Searcy Hospital on May 2-24, 2007 by his mother because he would not take his medications and was threatening harm to others; he was admitted from jail for failure to pay child support (Tr. 341-61). On admission, his speech was coherent though he required prompting;

10

he was "angry, frustrated and enraged at times" though his affect was subdued and relaxed (Tr. 341). Thomas admitted to visual and auditory hallucinations; his admission diagnosis included schizophrenia, paranoid type, bipolar disorder, psychotic disorder, post-traumatic stress disorder, alcohol dependence, adjustment disorder, and personality disorder (Tr. 341-42). His GAF was 34. Testing during his admission demonstrated "significant anger for which he internalizes. It is likely that he perceives hostile actions from others. Since he internalizes his anger he may be prone to episodes of depression" (Tr. 350). At discharge, Plaintiff's diagnosis was schizophrenia, paranoid type, bipolar disorder, alcohol dependence, post-traumatic stress disorder, adjustment disorder, and personality disorder; his GAF was 61 (Tr. 343). He was calm and cooperative and denied thoughts of harm to himself and others; thought processing was well-organized. Thomas denied on-going psychosis and none was noted; medications on discharge included Abilify[5] (Tr. 343).

On April 23, 2008, Psychologist Hall completed a mental medical source opinion form in which she indicated that Thomas

---

[5]*Abilify* is a psychotropic drug used in the treatment of schizophrenia. **Error! Main Document Only.***Physician's Desk Reference* 872-74 (62nd ed. 2008).

had marked limitations in his ability to use judgment in detailed or complex work-related decisions and in maintaining social functioning (Tr. 379-81). She further expressed the opinion that Plaintiff was moderately limited in the following: responding appropriately to supervisors, co-workers, and customers or other members of the general public; dealing with changes in a routine work setting; responding to customary work pressures; and maintaining activities of daily living. Hall stated that Thomas "has a personality disorder which significantly impacts his judgment and ability to get along with others in a negative way;" she further noted that he is rarely compliant with his treatment, which exemplifies his lack of judgment (Tr. 381).

Plaintiff testified at the evidentiary hearing that he had not worked in two years and that he had been fired from his last two bouts of employment after incidents on the job (Tr. 39-40). He testified that he had had about twenty jobs over the last fifteen years and that the longest he had been able to keep one was one year; he did not have trouble getting jobs, but his anxiety cause him to lose them (Tr. 44-45). Thomas stated that he had been treated for depression, intermittently, since he was

a child; he had attempted suicide three or four times (Tr. 41-42). Plaintiff stated that one of his problem was that he does not take prescribed medications (Tr. 43).

The ALJ summarized the evidence of record which followed February 21, 2005, the date Thomas claims to have become disabled (Tr. 14, 17-21). Focusing on the mental limitations,[6] the ALJ found that Plaintiff "possesses the severe impairments of major depressive disorder with psychotic features, bipolar disorder-mixed, and personality disorder" but that they were not disabling (Tr. 22). The ALJ then determined that Thomas suffered mild restriction in activities of daily living, a moderate degree of difficulty in social functioning, and moderate difficulties with regard to his concentration, persistence or pace (Tr. 23-24). The ALJ went on to make the following determination:

> [Thomas] has the residual functional capacity for, at most, moderate mental limitations, that would not preclude unskilled and low level semi-skilled work tasks (SSR 85-15). The claimant has the ability to understand, remember, and carry out instructions of a short-simple nature for at least two hour periods without special supervision and within a traditional work environment; he should have minimal

---

[6]As Plaintiff's claims refer only to mental impairments, the Court will not discuss those of a physical nature.

contact with the general public and not work in close proximity to coworkers; and changes in the workplace should be infrequent. There have been no significant exertional work-related limitations of record that would have lasted 12 continuous months during the period of adjudication. The claimant's mental residual functional capacity has entailed nonexertional moderate limitations in his abilities to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. However, the claimant has no significant limitation in his abilities to remember locations and work-like procedures, to understand, remember, and carry out very short and simple instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to make simple work-related decisions, to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to ask simple questions or request assistance, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places, and to set realistic goals or make plans independently of others.

(Tr. 25-26).

In reaching this conclusion, the ALJ discredited the Plaintiff's testimony (Tr. 28); Thomas has not challenged this decision. The ALJ went on to "assign[] determinative evidentiary weight to the findings and opinions of the State Agency psychological consultant" Eno (Tr. 26). The ALJ found Eno's report to be bolstered by the answers provided in a questionnaire completed by Thomas's most recent employer, Standard Furniture (Tr. 27; *cf.* Tr. 131-35).[7] The ALJ went on to discount the opinions of Psychologist Hall as unsupported by other credible medical evidence of record (Tr. 27). One reason for the ALJ's conclusion was that, in the words of the Government, "she did not have a longstanding treatment relationship with Plaintiff" (Doc. 17, p. 11; *accord* Tr. 28). Other reasons for the ALJ's conclusions include the difference in Hall's opinion and that of the psychiatrist who discharged Thomas from Searcy Hospital as well as the more restrictive mental limitations found by Hall in her mental medical source

---

[7]The Court notes that while the employer gave Thomas high marks on individual skills and tasks, he worked for only two months, had excessive absences (Tr. 131-35), and was terminated because Thomas got into a fight, possibly with his supervisor (*see* Tr. 39-40).

opinion of April 2008 compared to her opinion at the time she last examined him in August 2006 (Tr. 27-28).

The Court notes again that the opinion of a nonexamining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). Though the ALJ states that Psychologist Eno's opinion is supported by the record, the only evidence cited is one of Thomas's former employers who fired him, after less than three months service, for fighting after being regularly absent from work. The ALJ's wholesale adoption of the nonexamining physician's conclusions is not supported by substantial evidence.

The Court understands that there are deficiencies with the conclusions of Psychologist Hall, as pointed out by the ALJ, and does not suggest that they are the only evidence to be considered. But the ALJ's total rejection of Hall's opinions, in light of the fact that she is the only long-standing and regular contributor to the evidentiary record, is no more supported by the evidence than the total acceptance of the conclusions of a psychologist who never conducted a single

16

examination of the claimant.  The Court further notes that an additional problem to relying on the opinion of the non-examining physician, in this action, was that it was two months short of two years old at the time the ALJ rendered his decision.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding Plaintiff's ability to work.  Judgment will be entered by separate order.  For further procedures not inconsistent with this recommendation, see *Shalala v. Schaefer*, 509 U.S. 292 (1993).

DONE this 25th day of January, 2011.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE